FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB 22  AM 11: 38

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL DORSEY | CIVIL ACTION |
| VERSUS | NO. 05-2670 |
| WARDEN JAMES MILLER, ET AL | SECTION "R" (4) |

### REPORT AND RECOMMENDATION

Before the Court are two motions filed by the defendants: (1) a **Motion to Dismiss Defendants Richard Stalder and Linda Ramsay (Rec. Doc. No. 15)**; and (2) a **Motion to Dismiss Defendants James Miller, Charles Graham, Ronnie Seal, Charlie Morris, Samuel Tynes, and Bruce Steward (Rec. Doc. No. 17)**. These motions, along with the entire case, were referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b) and (c), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e (c)(1) and(2)**.

On August 25, 2005, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*,

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No _____

telephone.[2]  Upon review of the record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

## I.    Factual Summary

### A.    The Complaint

The plaintiff, Michael A. Dorsey ("Dorsey"), is presently incarcerated in the Allen Correctional Center in Kinder, Louisiana.[3]  Dorsey filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against the defendants, Richard Stalder, the Secretary of the Louisiana Department of Corrections ("DOC"), Deputy Secretary of DOC Linda Ramsay, and Warden James Miller of the Washington Correctional Institute ("WCI"), each in their individual and official capacities, and Sergeant Charles Graham, Lieutenant Ronnie Seal, Sergeant Charlie Morris, Sergeant Samuel Tynes, Emergency Medical Technician ("EMT") Bruce Steward, and Colonel Wayne Seal, each in their individual capacities.  Dorsey seeks monetary damages as a result of alleged violations of his constitutional rights while housed in WCI.

Dorsey alleges as background that, on December 28, 2002, Lieutenant Ronnie Seal and Sergeant Graham falsely accused him of attempted suicide and refusal to submit a urine sample.  As a result of that incident, Dorsey claims that he filed suit in the Eastern District of Louisiana under Civil Action No. 03-3227"K"(5).  Dorsey further claims that on November 19, 2003, he advised Ronnie Seal that the lawsuit had been sent to the court.  He contends that Ronnie Seal and his

---

926 F.2d 480, 481 (5th Cir. 1991).

[2]Rec. Doc. No. 18.  The plaintiff was sworn prior to testifying.  The cassette tape of the hearing is being forwarded to the custody of the Court Recording Unit along with a copy of this Report and Recommendation.

[3]Dorsey was incarcerated in the Dixon Correctional Institute at the time of the filing of the complaint.  Rec. Doc. No. 1.

colleagues began to take retaliatory measures against him for filing that lawsuit.  Dorsey seeks redress in this lawsuit as a result of those alleged retaliatory actions.

Specifically, Dorsey alleges that on November 20, 2003, Ronnie Seal denied him out-of-cell exercise time and verbally harassed him.  Dorsey also alleges that on November 24, 2003, he confronted Ronnie Seal regarding the denial of exercise a few days earlier.  Dorsey claims that, as a result of this confrontation, Seal falsely advised Sergeants Morris and Tynes that Dorsey was suicidal.  This resulted in Dorsey being placed on suicide watch for no reason.

He further claims that, on November 28, 2003, Ronnie Seal and Sergeants Graham, Morris and Tynes removed Dorsey from his cell and ransacked his belongings, including legal documents.  Dorsey claims that the cell search was unlawful and never recorded in the prison log books.

Dorsey also contends that Ronnie Seal and Graham taunted him after placing him back in his cell.  He claims that the officers left with twelve of his law, religious, and educational books and with many of his legal pleadings.

About one hour later, Dorsey asked a guard to allow him to speak with his social worker.  Dorsey claims that Ronnie Seal yelled from the lobby that he would send the Emergency Medical Technician, Bruce Steward, to see him so he could be charged a medical service fee.  Dorsey alleges that, when Steward eventually arrived on his tier, Ronnie Seal instructed him to charge Dorsey the fee for making a self-declared medical emergency.  Steward entered Dorsey's tier with Ronnie Seal and Sergeant Morris, with a sick call request form for Dorsey to complete.  When Dorsey refused to sign the form, Steward completed the form anyway, which resulted in Dorsey being charged a $3.00 medical assessment fee.  Dorsey claims that Sergeants Morris and Tynes also refused to assist with his requests to see a social worker and ranking officials.

Dorsey claims that, on the evening of the same day, November 28, 2003, he wrote a three page letter to Warden Miller detailing in chronological order the retaliatory misconduct of Ronnie Seal and Graham dating from November 10 to November 28, 2003. Dorsey further alleges that, on December 1, 2003, at the request of the Warden, Colonel Wayne Seal, Ronnie Seal's uncle, conducted an investigation and interview about the events outlined in the letter. Dorsey claims that Colonel Seal's written findings were in favor of the actions of his nephew and the other guards, which encouraged the retaliatory actions to continue.

Dorsey alleges further that, on December 4, 2003, while he was wearing full restraints, Ronnie Seal attacked him and called him a "nigga" in the presence of seven other white guards who stood by and watched.

He also alleges that, on December 26, 2003, he submitted to Warden Miller a four page Administrative Remedy Procedure Grievance Complaint No. WCI-2003-801.[4] In that complaint, he outlined the actions of Ronnie Seal, Sergeants Graham, Morris and Tynes, Colonel Seal and EMT Steward. Dorsey requested disciplinary actions against the officers, monetary damages, and replacement of his property.

The Warden denied relief in the First Step Response which Dorsey claims he received on April 30, 2004. Dorsey filed an appeal from that ruling to DOC Secretary Stalder.[5] Dorsey was again denied relief in the Second Step Response from Deputy Secretary Ramsay, which he received

---

[4]A copy of this complaint is attached to Dorsey's petition.

[5]Dorsey attached to his petition two First Step Responses. One was prepared by Ronnie Seal and bears the signature of Warden Miller and is dated April 29, 2004. The other reflects that it was prepared by Ronnie Seal and is dated April 26, 2004 but was not signed by a unit head.

on June 4, 2004.[6]  Dorsey claims that Ramsay is biased against him and has a custom of simply adopting the rulings from the prisons without independent investigation.  He therefore contends that Secretary Stalder is not properly training and/or supervising his subordinate staff at WCI which is the proximate cause of the constitutional violations he alleges.

Dorsey alleges that the actions of defendants Graham, Ronnie Seal, Morris, Tynes and Steward, are retaliatory in nature because of his prior federal lawsuits and because of his exercise of his rights to freedom of speech, access to the courts, and the grievance system.  He alleges that the retaliatory acts taken were the ransacking of his personal belongings, the taking of his law books, documents, and grievances, and the falsification of his medical reports.  He further contends that defendants Wayne Seal, Miller and Ramsay have been deliberately indifferent to the violations of his constitutional rights by acquiescing to, and conspiring with, the unconstitutional actions of their subordinates.

Dorsey seeks an order preventing the defendants from ransacking his personal belongings and seizing his legal materials.  He also seeks compensatory and punitive damages.

### B.    The *Spears* Hearing

During the Spears Hearing, Dorsey testified that the allegations in this complaint relate to the actions of the defendants taken in retaliation for his filing Civil Action No. 03-3227"K"(5).

He testified that after learning that he filed the suit on November 20, 2003, Ronnie Seal falsely accused him of attempting suicide.  He alleged that Ronnie Seal entered his cell and hung a sheet from the ceiling and reported that Dorsey tried to hang himself.  He testified that he complained to Colonel Wayne Seal about Ronnie Seal's actions and his refusal to allow him to have

---

[6]Dorsey attached to his petition a copy of the Second Step Response signed by Linda Ramsay on June 3, 2004.

out-of-cell exercise on November 20, 2003. He complained that Colonel Seal investigated but sided with Ronnie Seal when he incorrectly determined that Dorsey was on cell confinement and therefore not entitled to outdoor exercise.[7]

Dorsey further testified that, on November 28, 2003, Graham, Ronnie Seal and Morris ransacked his cell during a search. He stated that Morris took him out of the cell and placed him in the shower cell where he could be locked-in. He also claimed that Morris strip-searched him. When Morris found nothing on Dorsey, he returned to help Graham and Ronnie Seal tear up Dorsey's cell. Dorsey testified that they took a law book and two medical books from his cell.

Dorsey stated that he called out to Tynes, who was watching the area on the monitor, and asked him to call ranking officers. Dorsey said that Tynes told him that Tynes could not do anything. Dorsey conceded that he was not physically harmed during this event.

Dorsey also testified that he sued Steward, the EMT, because he complied with Ronnie Seal's instructions to charge Dorsey $3.00 for a self-declared medical emergency on November 28, 2003. Dorsey also complained that, when he refused to complete a sick call request, Steward filled one out which he believes violates the prison regulations.

Dorsey stated that he sued Warden Miller because he knew about Dorsey's complaints and did not investigate the correctional officers involved. He further stated that he sued Linda Ramsay because she does not like him and always believes the prison guards without investigating his complaints. Dorsey also testified that he sued Secretary Stalder because his subordinates at WCI are not trained properly and therefore do not understand or comply with their own prison regulations.

---

[7]Dorsey also testified about Colonel Seal's investigation of a broken window and the temperature in his cell. Dorsey conceded that this issue was addressed in one of his prior federal lawsuits and it is therefore not relevant to this lawsuit.

As an example, Dorsey referred to the incident when he refused to complete a sick call form reserved for the inmates and EMT Steward filled it out anyway. He also referred to the incident when Ronnie Seal, Graham, and Morris took his books during the cell search.

## II.    Pending Motions

Before the Court are the defendants' motions to dismiss seeking dismissal of Dorsey's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted. The defendants argue in both motions that they are entitled to qualified immunity and that Dorsey's claims must therefore be dismissed or, alternatively, he should be required to file a *Schultea* reply to their qualified immunity defense. The plaintiff has not filed a response to these motions.

The Court will conduct its statutory review for frivolousness before addressing the pending motions to dismiss. The Court will first set forth the standards applicable to its review.

## III.    Standards of Review

### A.    Statutory Review for Frivolousness

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e (c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such

7

as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**B.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)**

As set forth above, the framework articulated in § 1915, §1915A and Title 42 U.S.C. § 1997e, are statutory directives for the Court to conduct preliminary review of the pleadings pursuant to the Prison Litigation Reform Act of 1996. There is no mechanism in that statute for counsel to move the Court to conduct its statutory review. By its very language, a motion to dismiss based on the failure to state a claim, which encompasses consideration of immunity doctrines, must be brought by the party or counsel under Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint for failure to state a claim upon which any relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A complaint shall only be dismissed if it is beyond doubt that the plaintiff can prove no facts in support of his claim that would entitle him to relief. *Home Builders Ass'n of Ms., Inc. v. City of Madison, Ms.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

In resolving a Rule 12(b)(6) motion, the Court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pa. Blue Shield,* 896 F.2d 808, 812 (3rd Cir. 1990). Further, the Fifth Circuit has held that when reviewing pro se complaints, the Court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In *Taylor v. Gibson*, the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Taylor v. Gibson*, 529 F.2d 709, 713-14 (5th Cir.1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Finally, while conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

## IV.    Review for Frivolousness

### A.    Defendants in Their Official Capacities

Dorsey names three of the defendants, Miller, Stalder and Ramsay, in both their individual and official capacities. However, the claims against the defendants in their official capacity are frivolous and otherwise fail to state a claim for which relief can be granted.

In order to succeed on a claim under § 1983, a plaintiff must prove both the constitutional violation and action that was taken by a "person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). A state actor sued in his or her official capacity is not considered a person for purposes of suit under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Instead, the action would be considered one against the employer, in this case, the Louisiana Department of Corrections ("DOC"). *See Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n. 55 (1978). The DOC is a department within the Louisiana state government. La. Rev. Stat. Ann. § 36:401. For Eleventh Amendment purposes, the DOC is considered an arm of the state since any judgment against it or its subdivisions necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985). Therefore, suit against the defendants Miller, Stalder and Ramsay in their official capacities is suit against the State of Louisiana, which is prohibited by the Eleventh Amendment. *Muhammad v. Louisiana*, 2000 WL 1568210 (E.D. La. Oct. 18, 2000).

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed unequivocally); *Welch v. Dep't of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986). However, the State of Louisiana has not done so. To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court."

Dorsey's claims against the defendants in their official capacities fail to state a claim for which relief can be granted and are otherwise barred by the Eleventh Amendment and must be dismissed pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

### B.    Warden James Miller in his Individual Capacity

Dorsey names Warden Miller as a defendant because he is the supervisor at the prison and because the Warden denied his complaints of retaliation.  A supervisory official, like Miller, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.  *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979).

Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).  In this case, Dorsey conceded in the *Spears* Hearing that Miller did not have any involvement in the incidents of which he now complains.  His claims against Miller as a supervisory official are therefore frivolous.

Furthermore, to the extent Dorsey complains that Warden Miller denied his grievance complaints and did not intervene, his complaints are also frivolous.

It is true that an inmate has a First Amendment right to file grievances against prison officials on his own behalf. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996).  This right is protected, however, only if the underlying claim is not frivolous. *See Lewis v. Casey*, 518 U.S. 343, 353 n. 3

(1996) ("Depriving someone of a frivolous claim ... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.")  In this case, Dorsey was not prohibited from filing a grievance against Ronnie Seal and the other officers.  He is simply dissatisfied with the result.

However, inmates generally have no constitutional right under the First or Fourteenth Amendments to an effective grievance procedure.  *See Wilcox v. Johnson,* 85 F.3d 630, 1996 WL 253868 at *1 (6th Cir. May 13, 1996)(Table, Text in Westlaw); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994); *Buckley v. Barrow,* 997 F .2d 494, 495 (8th Cir.1993); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991); *Flowers v. Tate,* 925 F.2d 1463, 1991 WL 22009 at *1 (6th Cir. Feb. 22, 1991) (Table, Text in Westlaw).  In other words, there is no constitutional guarantee that the inmate will be satisfied with the responses given to his grievance complaints by the prison officials. *Id.*  For these reasons, Dorsey has failed to state a claim against Warden Miller arising from the denial of his grievances about the other officers.

Therefore, the claims against Warden Miller in his individual capacity should be dismissed as frivolous and/or for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

## C.   **Linda Ramsay in Her Individual Capacity**

Dorsey's sole claim against Linda Ramsay is that she denied his appeal from the grievance at WCI in which he complained about the retaliatory acts of Ronnie Seal and the other officers.  As discussed in connection with Warden Miller, this claim is frivolous and otherwise fails to state a claim for which relief can be granted.  As noted above, Dorsey does not have a constitutional

guarantee that he will be satisfied with the responses given to his grievance complaints by the prison officials.

**D.  <u>Colonel Wayne Seal</u>[8]**

Similarly, Dorsey claims that Wayne Seal did not thoroughly investigate his complaints about Ronnie Seal. Specifically, he alleged that Colonel Seal was intentionally indifferent because he covered for his nephew. This, he claims, encouraged Ronnie Seal to continue with retaliation.

An official is deliberately indifferent in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Dorsey conceded in his petition and at the *Spears* Hearing that Colonel Seal investigated his claims and interviewed him about his grievances. After this, he discovered that Dorsey was on suicide watch and not eligible for outdoor exercise.

Dorsey has not indicated a known risk or an indifference to his well-being by Colonel Seal. For these reasons, Dorsey has failed to state a constitutional violation or intentional indifference by Colonel Seal. Thus, his claims against Colonel Wayne Seal are frivolous.

**E.  <u>Richard Stalder in his Individual Capacity</u>**

Dorsey alleges that Richard Stalder, as Secretary of the DOC, is responsible for the actions of his employees and has failed to assure that the guards at WCI are properly trained and comply with the prison's regulations.

---

[8]The Court also notes that Dorsey has failed to serve Colonel Wayne Seal within the 120 days provided for in Fed. R. Civ. P. 4(m).

As discussed above with respect to Warden Miller, a supervisory official is not liable pursuant to § 1983 without some personal involvement in the alleged constitutional violations. Dorsey has not alleged that Stalder was personally involved in the events at WCI.  As the head of DOC, Stalder can not be held liable under a theory of respondeat superior for the alleged actions by the correctional officers at WCI.

Dorsey's basis for holding Stalder liable in this action stems from his belief that Stalder has not properly trained the officers at WCI.  A supervising officer not personally involved in the acts that deprived the plaintiff of his constitutional rights may be liable under § 1983 if:  (1) the warden or supervising officer failed to train or supervise the subordinate officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's constitutional rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.  *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991) (citations omitted).  Proof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that a lack of training or supervision caused a violation of his constitutional rights.  *Thompson*, 245 F.3d at 459 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir.1998) and *Thompkins v. Belt*, 828 F.2d 298, 304-05 (5th Cir. 1987)).  Finally, the inadequacy of the training "must be obvious and obviously likely to result in a constitutional violation." *Thompson*, 245 F.3d at 459 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

Dorsey has not alleged that Stalder is a direct supervisor responsible for training the officers at WCI.  In addition, Dorsey acknowledged that the DOC, which is controlled by Stalder, has promulgated regulations which, if followed, would protect his constitutional rights.  However, he

contends that the correctional officers at WCI have taken it upon themselves to ignore those regulations. This is not indicative of a failure to train by Stalder but rather an allegation of insubordination by the correctional officers.

Furthermore, to be liable for failure to train, Stalder would have to be deliberately indifferent to Dorsey's constitutional rights. As noted above, Stalder would be deliberately indifferent "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Dorsey has not alleged that Stalder was aware of the events taking place at WCI or knew that he was at risk of serious harm as a result thereof.

For the foregoing reasons, Dorsey's tenuous claims against Richard Stalder in his individual capacity are frivolous and otherwise fail to state a constitutional violation for which relief could be granted under § 1983.

### F.    Search of the Cell by Ronnie Seal, Graham and Morris

Dorsey alleges that Ronnie Seal, Graham, and Morris should be held liable because they conducted a search of his cell on November 28, 2003 which left his belongings in disarray and resulted in the loss of personal items including some law materials.

It is well settled that prisoners maintain those constitutional rights which are not inconsistent with the legitimate interests of the prison administration. *Hudson v. Palmer*, 468 U.S. 517 (1984). In *Hudson*, the Supreme Court held that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have. *Hudson*, 468 U.S. at 25-6; *Thorne v. Jones*, 765 F.2d 1270 (5th Cir. 1985). The federal courts have therefore found that the Fourth Amendment prohibition against unreasonable searches does not attach to the prison cell or its

contents. *Burnette v. Phelps*, 621 F. Supp. 1157, 1161 (M.D. La. 1985) (citing *Hudson*). The Supreme Court has also held that the legitimate prison objective of maintaining constant security far outweighs a prisoner's right of privacy to the extent such a right does exist. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Pell v. Procunier*, 417 U.S. 817 (1974).

For these reasons, Dorsey has no recognized privacy interest which would render the search of his belongings to be unconstitutional. His claim in that regard is frivolous.

Furthermore, to the extent Dorsey claims that his personal items were removed improperly, he has failed to state a federal issue. The Due Process Clause is not implicated by the random loss of property, whether by intentional or unintentional act of a state actor, so long as the inmate has a meaningful post-deprivation remedy. *Hudson*, 468 U.S. at 531; *see also Parratt v. Taylor*, 451 U.S. 527 (1981).[9] Louisiana's tort laws provide an adequate post-deprivation remedy for Dorsey to pursue. Pursuant to La. Civ. Code Art. 2315, et seq., the plaintiff has the right to sue any person whom he believes has caused him damage as a result of the loss of his property.[10] This is an adequate state post-deprivation remedy which prevents Dorsey from pursuing his claims under § 1983. *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984) (noting that La. Civ. Code Art. 2315 is adequate state remedy to redress loss of prisoner's property); *Harrell v. Matthews*, 1994 WL 449451 at *1 (E.D. La. Aug. 16, 1994) (same). Dorsey therefore has no legal basis for seeking relief under § 1983 and his claim should be dismissed as frivolous.

---

[9]*overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986); *see also Arnaud v. Odom*, 870 F.2d 304, 308 (5th Cir.), *cert. denied, sub nom*, 493 U.S. 855 (1989).

[10]La. Civ. Code Art. 2315 provides in relevant part that "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

16

Finally, the Court notes that the taking of the legal materials also fails to state a denial or interference with his right to access to the courts and therefore fails to state a claim for which relief can be granted.  In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court articulated a "fundamental constitutional right of access to the courts," which requires prison officials to guarantee prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.  *Bounds*, 430 U.S. at 828; *Lewis v. Casey*, 518 U.S. 343, 350 (1996).  "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."  *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1994).  The right, therefore, is limited to "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis*, 518 U.S. at 356.

The records of this Court reflect that Dorsey had filed nine civil rights complaints in this Court arising from his incarceration at WCI.  Six of those suits were filed after the November 28, 2003 search of his cell.  Three of his suits have been dismissed as frivolous.  Dorsey's ability to access the courts has not been impeded or prejudiced as evidenced by the fact that the court is currently considering his civil rights claims.  *See e.g. Featherman v. DiGiacinto*, 617 F. Supp. 431 (E.D. Pa. 1985) (a prisoner who filed a lengthy and multifaceted federal civil rights complaint regarding placement and conditions in administrative segregation could not therein complain of denial of access to courts or law library, since complaint itself demonstrated otherwise); *Brown v Sielaff*, 363 F. Supp. 703 (W.D. Pa. 1973) (a review of the record was conclusive to prove that the

prisoners had freely filed actions and taken appeals of their particular causes of action and had thus not been denied access to the federal courts.)

For the foregoing reasons, Dorsey's claims arising out of the search of his cell are frivolous and otherwise fail to state a claim for which relief can be granted.

### G.    Sergeant Tynes's Failure to Summon Ranking Officers

Dorsey alleges that Sergeant Tynes failed to take action when he asked that ranking officers be called while his cell was being searched. Dorsey has failed to indicate how Tynes's actions, or inaction, rise to the level of a constitutional violation. As discussed above, the search of his cell was not a violation of his constitutional rights. He acknowledged that he was not physically harmed during the search of his cell. For these reasons, he has not established that Tynes was deliberately indifferent to a risk of harm or to an occurrence which was an apparent violation of his constitutional rights. His claims is therefore frivolous.

### H.    False Medical Charge by Steward and Ronnie Seal

Dorsey alleges that Ronnie Seal and EMT Steward falsified his medical records in an effort to wrongfully charge him for a $3.00 medical access fee. As discussed above, Dorsey fails to state a constitutional violation, even with the allegation of an intentional taking of the funds, because Louisiana provides an adequate state post deprivation remedy for him to sue to recover his money. *See Hudson*, 468 U.S. at 531.

Furthermore, he has failed to allege that any other constitutional violation occurred as a result of this incident. Dorsey alleged in his complaint, and his grievance complaint to the prison, that he asked to see his social worker to discuss his mental distress after the destructive search of his cell. Dorsey testified that the prison policy is such that an inmate is charged $3.00 when he requests

18

medical care.  He further acknowledged at the *Spears* Hearing that Ronnie Seal said he would call the EMT to come and see him about his medical concerns.  He further testified that, when EMT Steward arrived, Ronnie Seal told him that Dorsey requested medical attention.  Dorsey refused the attention offered by Steward and refused to complete the required sick call form to see the social worker.

Thus, Dorsey's own allegations and testimony indicate that he summoned for medical help and refused the care when Steward arrived.  There is no constitutional right implicated in these allegations.  Without a constitutional violation, Dorsey has failed to state a cognizable §1983 claim against Steward or Seal arising from this event.  *See Flagg Bros., Inc.*, 436 U.S. at 156; *see also Will*, 491 U.S. at 58.

## I.     Use of Abusive or Offensive Language

Dorsey further alleges that Ronnie Seal and other officers often cursed at him and used offensive language.  The use of inappropriate language and even verbal abuse are not cognizable claims under § 1983.  *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied*, 464 U.S. 998 (1983); *Burnette*, 621 F. Supp. at 1157.  "Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . ." *Jackson v. Liberty County*, 860 F. Supp. 360, 363 (E.D. Tex. 1994).  Furthermore, Dorsey, as a prisoner, can not recover for this type of emotional damages under any circumstance.  *See* 42 U.S.C. § 1997e.

Finally, allegations of verbal abuse as well as threatening language and gestures on the part of a correctional officer do not rise to the level of cruel and unusual punishment under the Eighth Amendment.  *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993).

19

For these reasons, Dorsey has failed to state a claim for which relief can be granted as a result of the offensive language used by the correctional officers at WCI.

**J.**    **Claims of Retaliation**

Dorsey ultimately claims that Ronnie Seal and Sergeant Graham have retaliated against him and encouraged some of the other defendants to do so because he filed federal civil rights lawsuits against them.

For an inmate to establish a retaliation claim, he must demonstrate the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident would not have occurred. *Clarke v. Stalder*, 121 F.3d 222, 231 (5th Cir. 1997). However, in *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995), the Fifth Circuit cautioned that "[c]laims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Id.* at 1166 (citation and quotation omitted). These standards therefore place a significant burden on the inmate to produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.*

Although Dorsey sets forth a chronology of events in his complaint, he has not set forth operative facts showing retaliation. He does not state a claim for retaliation where he fails to establish the denial of a specific constitutional right because his allegations of constitutional violations were found frivolous by this Court's review.

For instance, he has not alleged denial of access to courts since he filed at least nine civil rights cases in this federal court. *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997). He also

concedes that he had ample opportunity to utilize the grievance process at the prison. His lack of success through the grievance process does not demonstrate retaliation or conspiracy. As is addressed further in this opinion, he also failed to establish any of the other constitutional violations enumerated in his complaint arising out of the events on November 28, 2003, which are the main focus of this lawsuit.

Accordingly, his retaliation claims alleging denial of access to the courts, free speech, and the violation of the other constitutional provisions addressed herein are legally frivolous and otherwise fail to state a claim upon which relief can be granted under § 1983.

### K.    Excessive Force by Ronnie Seal

Having resolved the foregoing claims to be frivolous and otherwise to fail to state a claim, the complaints leaves one final allegation for consideration. Dorsey alleges that on December 4, 2003, Ronnie Seal attacked him while he was wearing restraints.

The Supreme Court has recognized that a correctional officer's use of excessive physical force against a prisoner may in an appropriate setting constitute cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1 (1992). This was well-settled law at the time of the alleged incidents. To prove an excessive force claim, a plaintiff must show that he suffered (1) a physical injury, (2) resulting directly and only from the use of force that was clearly excessive to the need, and that (3) the excessiveness was objectively unreasonable. *Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir. 1993).

Dorsey's allegation appears adequate to state a claim of excessive force, at least sufficient to survive a frivolousness review. However, Dorsey contends that the claims raised in his complaint

were exhausted through the prison's grievance system in Grievance No. WCI-03-801. A copy of that grievance is attached to his complaint.

A review of that grievance reflects that he did not mention the alleged attack by Ronnie Seal on December 4, 2003. According to Dorsey's documents and complaint, the alleged attack occurred three weeks prior to the filing of that grievance and it is not mentioned therein.

Section 1997e as amended by the Prison Litigation Reform Act of 1996 ("PLRA") provides as follows:

> No action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). An inmate is required to exhaust administrative remedies prior to instituting suit in federal court without regard for the type of relief he is seeking or the type of relief available under the prison's grievance system. *Booth v. Churner*, 532 U.S. 731, 739 (2001). Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory in cases alleging all aspects of prison life. *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983, 988, 992 (2002) (citing *Booth*, 532 U.S. at 739).

The Court finds that Dorsey has failed to exhaust administrative remedies regarding the alleged use of excessive force by Ronnie Seal on December 4, 2003. The claim should be dismissed without prejudice for failure to exhaust administrative remedies.

## V.    Defendants' Motion to Dismiss

Having resolved all of the claims raised by Dorsey in this complaint in the review for frivolousness, the defendants' motions to dismiss are now rendered moot. The Court also notes that the defendants' alleged qualified immunity defense is not relevant to this case.

A qualified immunity defense is analyzed under a two-step process. *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (on appeal after remand); *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997). The first step is to determine whether plaintiff has alleged a violation of a clearly established constitutional right under currently applicable constitutional standards. *Jacobs*, 228 F.3d at 393; *Hare*, 135 F.3d at 325; *Coleman v. Houston Indept. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). When the plaintiff alleges a constitutional violation so as to satisfy the first prong, the second step requires the Court to determine whether defendant's conduct was objectively reasonable under existing clearly established law. *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001); *Jacobs*, 228 F.3d at 393; *Foster v. City of Lake Jackson*, 28 F.3d 425, 428-29 (5th Cir. 1994). Because the plaintiff has failed to state a violation of a constitutional right, the Court need not consider whether the defendant's conduct was objectively reasonable.

The defendants' motions to dismiss should therefore be dismissed as moot because the Court has resolved the claims in its review for frivolousness.

## VI.   Recommendation

It is therefore **RECOMMENDED** that the plaintiff's § 1983 claims against the defendants, Warden James Miller, Secretary Richard Stalder and Deputy Secretary Linda Ramsay, in their official capacities, be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim for which relief can be granted and/or for seeking monetary damages from an immune defendant pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that the plaintiff's § 1983 excessive force claim against the defendant Lieutenant Ronnie Seal be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies as required by Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that the plaintiff's remaining § 1983 claims against the defendants, Richard Stalder, Linda Ramsay, Warden James Miller, Sergeant Charles Graham, Lieutenant Ronnie Seal, Sergeant Charlie Morris, Sergeant Samuel Tynes, Bruce Steward, and Colonel Wayne Seal, be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that the defendants' **Motion to Dismiss Defendants Richard Stalder and Linda Ramsay (Rec. Doc. No. 15)** and **Motion to Dismiss Defendants James Miller, Charles Graham, Ronnie Seal, Charlie Morris, Samuel Tynes, and Bruce Steward (Rec. Doc. No. 17)** be **DISMISSED** as moot.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ___2/8___ day of ___February___, 2006.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**